IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-75,108






EX PARTE RODNEY KEITH CASH, Applicant









ON APPLICATION FOR A WRIT OF HABEAS CORPUS COURT

FROM HARRIS COUNTY




 Holcomb, J., filed a dissenting opinion, in which Price, Womack, and
Johnson J.J. joined.


D I S S E N T I N G O P I N I O N 


 I respectfully dissent. The majority denies habeas relief because applicant did not
show that he was prejudiced under the second prong of Strickland. (1) I would hold that
applicant met the first prong of Strickland (that trial counsel was deficient) and also its
second prong, i.e., "there is a reasonable probability that, but for counsel's unprofessional
errors , the result of the proceeding would have been different." 466 U.S. at 694. 


I. Deficient Performance

 Because the majority does not hold whether counsel was deficient, i.e., whether
"counsel's representation fell below an objective standard of reasonableness," id. at 688-89,
I find it unnecessary to discuss it at great length, other than to say that we have held, in a
variety of contexts, that failing to follow clear procedural rules will usually be considered
objectively unreasonable representation. See e.g., Ex parte Coy, 909 S.W.2d 927, 928 (Tex.
Crim. App. 1995); Ex parte Dietzman, 790 S.W.2d 305 (Tex. Crim. App. 1990); cf.
Hernandez v. State, 726 S.W.2d 53, 58 (Tex. Crim. App. 1986) (rejecting applicant's claim
that his lawyer was unfamiliar with the rules of evidence). 

 I would add, however, that in my view, the motion for community supervision was
adequately verified. The "defect" in the motion, according to the majority is that the
signature line where applicant's name should appear is blank on the affidavit attached to the
motion; however, applicant's signature appears on the face of the motion. But more
importantly, the affidavit is subscribed by the trial court clerk, and he or she avers that
applicant appeared and swore to the facts contained in the motion. (2) This is and should be
sufficient; otherwise, we are elevating form over content. (3) 

II. Prejudice

 When evaluating whether an applicant was prejudiced by the unprofessional errors of
his attorney, a habeas court may not apply an outcome determinative test. Strickland, 466
U.S. at 693-94. That is, we must not place a burden on the applicant to show that he was
more likely to have prevailed than not if his lawyer had not committed the unprofessional
errors. See id. This standard is inappropriate because the defendant suffers from "the
absence of one of the crucial assurances that the result of the proceeding is reliable." Id. 

 After a careful review of the appellate and habeas records, it appears to me that the
majority placed a burden of proof upon the applicant to show that the evidence preponderates
in his favor; namely, that applicant did not demonstrate that he would have received
probation or a lesser sentence had the jury had the option of granting community supervision. 
Specifically, the majority concludes that "the central issue of prejudice under Strickland, is
whether there is a reasonable probability that applicant's sentencing jury would have
recommended probation had the issue been submitted to it." (4) (citing Warden v. Visciotti, 537
U.S. 19 (2002)). Setting aside for the moment that Visciotti is plainly distinguishable, it is
also plain that, according to the majority's holding today, applicant would have to
demonstrate that there was a reasonable probability that the jury would have recommended
probation or a lesser sentence in order to be entitled to relief. This is, in the plain words of
Strickland, inappropriate--the holding here is nothing more than an application of the
outcome determinative standard prohibited by Strickland. 

 Now, back to Woodford v. Visciotti. Without more than a parenthetical summary of
Visciotti, the majority denies relief because applicant must show (but did not show) that the
jury would have recommended a more favorable sentence. However, Visciotti does not set
forth, as a substantive rule, that second-prong Strickland error during sentencing must be
such that the jury would have given the defendant a lesser sentence. Rather, the Supreme
Court in Visciotti simply concluded, as it has many times, that federal habeas review of state-court habeas proceedings must focus on whether the state court's judgment was an
unreasonable--not just incorrect--application of federal law. Deciding that the Ninth Circuit
had substituted its judgment for the state habeas court, the Supreme Court reversed, noting
it may have agreed with either the state or the federal court's interpretation of whether
Visciotti was prejudiced by his lawyer's failure to introduce mitigating evidence, but further
held that the federal court's duty is not to consider whether the state-court decision is
incorrect, but rather, if it involved an unreasonable application of Strickland. As such,
Visciotti is not precedent as substantive law to be applied by the state habeas court; instead,
it is a decision which limits, pursuant to statute, the federal court's right to reverse a state
court's ruling on habeas corpus relief. 

 After explaining that relief in this case would be based on "pure conjecture and
speculation," (5) the majority cites this Court's "highly questionable" pre-Strickland holding
in Mercado v. State, 615 S.W.2d at 228, to deny relief. See George E. Dix & Robert O.
Dawson, 43A Texas Practice and Procedure § 39.22 (2001) [hereinafter Dix &
Dawson]. Mercado was charged with possession of heroin, a jury found him guilty, and
assessed punishment at 17 years imprisonment. 615 S.W.2d at 226. In a motion for new
trial, Mercado complained that he received ineffective assistance of counsel because his
lawyer never told him that he was eligible for an instruction on probation and his lawyer did
not file a motion for probation. At the hearing on the motion for new trial, trial counsel
testified that he indeed failed to file the motion or inform Mercado that he was entitled to the
instruction on probation. Importantly, however, trial counsel testified (unlike trial counsel
here; see Strickland, 466 U.S. at 690-91) that his decision not to submit the issue of probation
to the jury was one of trial strategy; i.e., that such a request could be viewed by the jury as
a partial admission of guilt. 615 S.W.2d at 227. 

 As a pre-Strickland case, the Mercado panel devoted most of the opinion to hashing
out the proper standard of review, and concluded in two sentences (the latter of which is an
alternative holding) that Mercado was not entitled to relief because (1) there was no evidence
admitted at the motion for new trial or in the record to show that Mercado was eligible for
probation, and (2) "[f]urther, under the penalty assessed by the jury under the facts of the
case, the jury would not have reached the consideration of any motion for probation, even
if one had been filed." Id. at 228. 

 Thus, the "rule" in Mercado is most certainly dicta, as it was clearly an alternative
holding to the conclusion that Mercado had not shown he was entitled to probation in the first
place. But the dicta in Mercado has, sadly, morphed into some sort of "rule" which has
become to be known as such--when a jury assesses punishment at more than ten years, the
improper failure to submit probation as a punishment option cannot be reversible error
because the jury would not have reached the consideration of a motion for probation. See
Resendez v. State, 2005 Tex. App. Lexis 3340 *3-4 (Tex. App.--San Antonio 2005, no pet.)
(not designated for publication); Dix & Dawson, 43Texas Practice and Procedure §
36.58. Indeed, this "rule" is no less speculative or based on conjecture than a conclusion that
the lack of a probation instruction did not prejudice applicant. Vasquez v. State, 830 S.W.2d
948, 951 (Tex. Crim. App. 1992) (per curiam).

 Simply put, there is not a sufficiently strong logical connection between the majority's
conclusion (that the jury would not have given a more lenient sentence had it had the
probation option before it) and the premise (the jury assessed a 40-year sentence). (6) See Dix
& Dawson, 43A Texas Practice and Procedure § 39.22 (2001) (if defendant was entitled
to have issue of probation submitted to the jury, but it was not, that would surely affect the
jury's punishment deliberations because it would not be considering the full range of
punishment applicable to the case). 

 Alas, my belief that Mercado's dicta is unsound because it is based on pure conjecture
and speculation, has not swayed a majority of the judges of this Court to overrule this
mischievous precedent, but my voice is not without strong allies. Namely, Professors Dix
and Dawson have decried the "rule" in Mercado, and more eloquently than I, explain its
fallacy as follows: 

 [The analysis in Mercado] seems incomplete because failure to charge on
probation may well affect the length of the sentence the jury ultimately gives
because failure to charge on probation gives a false picture of the seriousness
of the offense. Further, the jury is instructed that it must assess a punishment
of 10 years or less for the defendant to be eligible for probation. [Tex. Code
Crim. Proc. Ann. art. 42.12 § 4(d)(1)]. It would not be unusual for a jury to
assess 10 years and give probation, when that is an option, but to assess more
than 10 years in the absence of the option of probation. In other words, the
fact that without a probation option the jury assessed more than 10 years does
not mean that it would have rejected probation had that option been made
available to it. 


Dix & Dawson, 43Texas Practice and Procedure § 36.58 (citing Snow v. State, 697
S.W.2d 663, 665 (Tex. App.--Houston [1st Dist.] 1985)). 

 In Snow, the court of appeals explained the "gravitational influence" that the probation
option may have had on a jury's ultimate verdict: 

 [T]here is a reasonable probability that a jury instruction concerning probation
would have altered the outcome of the punishment by influencing the jury to
seriously consider lower sentence that 10 years imprisonment. The right to be
considered for probation is valuable, even if probation is not given, because
the jury instruction concerning probation forcefully directs the jury's attention
to the lowest punishment allowed by law. 


I would "overrule" Mercado and follow Snow. See 697 S.W.2d at 665. 

 The majority cannot say with any assurance that the result of the proceeding was
reliable when admitting that the jury did not have before it the proper range of punishment. 
See Strickland, 466 U.S. at 668. Nor does the majority dispute that the proper range of
punishment in this case would have included the option of community supervision. See Maj.
Op. at *3 & n.4. Applicant was fifteen years old at the time of the present offense, and the
record reflects that he had one prior offense for unauthorized use of a vehicle, committed
when he was fourteen years old. This prior offense would not prevent the trial court from
granting a jury charge on community supervision. See Tex. Fam. Code Ann. § 51.13(d). 
Therefore, there was no legal bar to submitting the question of probation to the jury, and the
trial court should have done so. (7)

 We have repeatedly held that any punishment selected by the jury must fit within the
statutory range of punishment. Cartwright v. State, 833 S.W.2d 134, 135 (Tex. Crim. App.
1992); Stein v. State, 515 S.W.2d 104, 108 (Tex. Crim. App. 1974); see also Gonzales v.
State, 672 S.W.2d 618, 620 (Tex. App.--Amarillo 1984); Dix & Dawson, 43Texas
Practice and Procedure § 36.53. As Professors Dix and Dawson opined,"it seems
abundantly clear that the mere fact that the jury selected a punishment within the correct
range does not mean automatically that the defendant was not harmed by the mistaken
instruction." Dix & Dawson, 43Texas Practice and Procedure § 36.53. A jury is likely
to attempt to assess the culpability of the defendant's offense within a continuum of severity
as reflected in the range of punishment it was erroneously given by the trial court. Id. 
Therefore, if the range of punishment is overstated, that would tend to cause the jury to select
a more severe sentence than it might have selected had it been correctly instructed. Id. (citing
Uribe v. State, 688 S.W.2d 534, 538 (Tex. Crim. App. 1985), overruled on other grounds by
Cartwright, 833 S.W.2d at 135). 

 We discussed an analogous problem in Uribe v. State, saying that when the jury is
given a punishment greater than what the law allows, "[t]he court's misdirection thus harms
the defendant because the jury is instructed to consider his offense as more serious than the
law grades it." 688 S.W.3d at 538. Similarly, since applicant's jury did not receive a charge
with the proper range of punishment, and instead received one that erroneously failed to
show that the law would have allowed for probation, applicant was surely harmed because
it likely caused the jury to consider his crime far more serious than the law graded it. See id. 
In sum, the fact that applicant suffered from the absence of the minimum punishment allowed
by law, applicant sufficiently showed that the outcome of the case was undermined. See
Strickland, 466 U.S. at 696. (8) 

III. Conclusion

 We must always be mindful that when reviewing claims of ineffective assistance of
counsel, our ultimate duty is to insure the "fundamental fairness of the proceeding." See id. 
The process here has not been fair as contemplated by Strickland. See id. Moreover, the
record reflects an unreliable result due to a breakdown in the adversarial process, which had
more than a mere conceivable affect on the outcome of the proceeding. See id. at 693. 
Because I do not believe that the proceedings produced a "just result" in this case, I
respectfully dissent. See id. at 696; Vasquez v. State, 830 S.W.2d at 951. 

Filed: November 16, 2005.

Publish



 





 
1. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). 
2. The State acted inconsistently by complaining on direct appeal that the motion was not
properly verified, and then shifted positions on habeas review (where such an argument would be
grounds for relief) and argued that the motion was indeed properly verified. Obviously then, the
State took the mutually exclusive positions when it would be favorable to itself. This created a
fundamentally unfair situation for both applicant and his lawyer. See e.g., New Hampshire v.
Maine, 532 U.S. 742, 749 (2001) ("Where a party assumes a certain position in a legal
proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his
interests have changed, assume a contrary position . . . . "); Tex. Code Crim. Proc. Ann. art.
2.01 (It shall be the primary duty of all prosecuting attorneys not to convict but to see that justice
is done).
3. But even though I believe that trial counsel should not be found deficient for failing to
insure that the motion for community supervision was verified properly, applicant's argument
that trial counsel was deficient for failing to put on any evidence to show that applicant was
indeed entitled to probation is a more compelling argument. See Tex. Code Crim. Proc. Ann.
art 42.12 § 4(e); see e.g., Mercado v. State, 615 S.W.2d 225, 228 (Tex. Crim. App. [Panel Op.]
1981).
4. While it is hard to imagine how applicant could ever meet such a burden as set forth by
the majority today, see Tex. R. Evid. 606(b), Strickland clearly states that the applicant need not
do so to be entitled to habeas relief. Strickland, 466 U.S. at 694 ("The result of a proceeding can
be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel
cannot be shown by a preponderance of the evidence to have determined the outcome."). 
5. The majority concludes that the basis for granting relief in this case would amount to
"conjecture and speculation." Webster defines "conjecture" as "a conclusion deduced by surmise
or guesswork." Webster's Ninth New Collegiate Dictionary 277 (1983). "Speculate"
means "to take to be true on the basis of insufficient evidence." Id. at 1133. Would it not though
be equally true that the majority's holding today, and the reasoning in Mercado, are also based on
pure conjecture and speculation?
6. The "Modus Ponens" reasoning of Mercado goes something like this: 

 If "P" then "Q".

 "P"; Therefore "Q"

Assign "the jury gave a forty-year sentence in this case without the probation option" to P;
Assign "the jury would not have considered a lighter sentence even with probation option" to Q. 
The equation we end up with is this: 

 If the applicant received a forty-year sentence, then the jury would not have
considered probation or a lighter sentence. Applicant received a forty-year
sentence; therefore, the jury would not have considered probation or a lighter
sentence. 

This reasoning merely affirms the consequence, which is a non-sequitur ("it does not follow")
and faulty logic. See A. R. Lacey, A Dictionary of Philosophy (3d ed. 1996). By plugging
other facts into the model, the faulty logic is easier to see: 

 If the streets are wet, then it's raining. The streets are wet; therefore, it's raining. 

I would solidly renounce Mercado. 
7. "[A] a court should presume . . . that the judge or jury acted according to law." 
Strickland, 466 U.S. at 694. I find footnote 6 of the majority opinion worthy of comment. 
Strickland instructs that we must presume the judge and the jury acted in accordance with the
law. As the majority has nearly conceded, applicant was entitled to the probation instruction. 
Accordingly, whether the trial court would have committed error anyway is not a proper
consideration and should not be a factor in this Court's reasoning upon applicant's ineffective
assistance of counsel claim. This improper consideration further indicates a fundamentally unfair
result in this case. See id. at 696.
8. Errors that undermine confidence in the fundamental fairness of the proceeding justify
habeas relief. See, e.g., Teague v. Lane, 489 U.S. 288, 311-314 (1989).